only pay a proportionate part of the redemption money. The purchaser stands on his title. He is not bound to yield it up unless his claim under the lien is satisfied. He has bought the whole estate in the land, and one tenant in common cannot insist that the estate shall be divided up and he allowed to redeem for his individual share.

I do not think any cross bill is necessary to be filed by Jeffards. Having submitted to the redemption of the land, he is like any other incumbrancer. The court, on a bill to enforce complainant's lien, will direct the order in which the incumbrances shall be paid and ascertain their amount. Nor do I think that the fact that Jeffards paid subsequent taxes in scrip which he purchased at a discount is any concern of the complainant. Jeffards had a right to make payment of the taxes in any lawful way. Redemption can be insisted on by the owner of the land on the payment of the subsequent taxes and 50 per cent. interest thereon, and not on the repayment of what it has cost the purchaser to pay the taxes.

The conclusion I have reached is that the defendant Jeffards is entitled to priority of payment out of the fund, the proceeds of the sale, for the amount of his purchase money and all subsequent taxes of all descriptions, with an annual interest thereon of 50 per cent., calculated up to the time of filing his answer, and 6 per cent. on that amount until the date of the final decree.

---

## Case No. 10,564.

O'REILLY v. MORSE.

[See 15 How. (56 U. S.) 126.]

---

## Case No. 10,565.

O'REILLY v. MORSE.

[See Case No. 9,859.]

---

## Case No. 10,566.

O'REILLY v. SMITH.

[1 MacA. Pat. Cas. 218.]

Circuit Court, District of Columbia. April, 1853.

PATENT INTERFERENCES—EXTENSION OF TIME FOR HEARING—WHEN INTERFERENCE EXISTS—RAILROAD RAILS.

[1. An affidavit in support of a motion for an extension of time for the hearing, on the ground of inability to procure the attendance of witnesses, is entirely insufficient when it does not state the names, competency, or materiality of the witnesses.]

[2. The question of extending the time for the hearing lies within the discretion of the commissioner, which will be presumed to have been soundly exercised.]

[3. A splice-plate extending over three cross-ties at the joint between railroad rails with a rib along its upper surface at the ends of the rails, held not to interfere with a rail consisting of an upper and under part throughout its whole length, with a rib in the lower part exactly fitting the under side of the upper part, and the two parts to be slid upon each other so as to break joints at the middle, thus forming when laid a continuous double rail.]

[This was an appeal by Patrick O'Reilly from a decision of the commissioner of patents, in an interference, awarding priority to J. Dutton Steele, assignor to Charles E. Smith, in respect to an invention relating to railroad rails.]

Watson & Renwick, for appellant.

MORSELL, Circuit Judge. Patrick O'Reilly filed his application on the 17th of April, 1851 (afterwards patent No. 9,703; see 1 Patent Office Report 1853, p. 188, for diagram). His specification applicable to this issue states in substance that his improvement consists in dividing the ordinary "bridge" rail, or other rail having a flanged base, by a longitudinal division or joint, (parallel, or nearly so, to the top of the flanges and the arch, and to the sides which join the arch and flanges,) into two layers, plates, or half rails of nearly equal thickness and weight. By sliding the upper plate or layer over the under one until the end of one is opposite the middle of the other, and then riveting or otherwise fastening them together in this position, they will reciprocally break joint with and support each other, and thus give greatly increased stiffness and strength to the track. The specification sets forth the advantages of this construction, the saving of metal, in reducing the expense of repairing, and the increased usefulness of the device. He claims as his invention the divided or double-plate rail, as described, composed of a flanged arch or bridge-rail of the usual form, and about half the usual thickness and weight, with another rail of similar external form, thickness and weight, on which it rides, the under side of the arch of the upper rail or rider forming a groove to fit over and rest upon the arch or tongue of the lower rail; the flanges of the upper rail resting upon and fitting those of the under rail, and the spike-holes of the two corresponding, so that the same bolts or spikes will secure them firmly together and to the foundation. The compound rail thus formed and proportioned has a double bridge and a double base, the two portions of which reciprocally support and strengthen each other. He also claims the method described of strengthening the joints of the ordinary bridge-rail while leaving its middle, of adequate strength, by moving a longitudinal section of its inside, equal to about half the weight of the rail, half its length endwise, so as to break joint with the outside; or, again constructing the rail in two parts to correspond in form and position with the two parts of the device before described, whereby the joints of the upper rail are rendered as capable of supporting the load as